NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BARRY SARTOR,**<br><br>**Plaintiff,**<br><br>v.<br><br>**CAROLYN COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,**<br><br>**Defendant.** | Civil Action No. 13-7620 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Plaintiff Barry Sartor seeking review of the Administrative Law Judge's final decision denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has considered the submissions in support of and in opposition to the present appeal and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

**I.      Background**

Plaintiff is a forty-nine-year-old man with a ninth-grade education. (D.E. No. 8, Administrative Transcript ("Tr.") at 17, 36-37). He previously worked as a driver, but lost his job when the company he worked for shut down. (Tr. at 37).

1

Plaintiff filed his application for SSI on May 20, 2010,[1] claiming that his disability began on February 1, 2010. (Tr. at 10). The Commissioner denied Plaintiff's claim on September 24, 2010 and again upon reconsideration on June 16, 2011. (*Id.*). Plaintiff filed an appeal on June 20, 2011 and testified at a hearing before an Administrative Law Judge ("ALJ") on April 27, 2012. (*Id.*). The ALJ issued an opinion on July 26, 2012 denying the claim. (Tr. at 7). Plaintiff requested review by the Appeals Council, but that request was denied on October 21, 2013. (Tr. at 1). Thus, Plaintiff exhausted all opportunities for administrative review before filing the instant appeal.

## II.   Legal Standards

### A.   Standard of Review

The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). Substantial evidence is more than a "mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "need not rise to the level of a preponderance," *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003)), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

---

[1] The Court notes that Plaintiff identifies the application filing date as May 5, 2010. (D.E. No. 14, Plaintiff's Brief ("Pl.'s Br.") at 1; Tr. at 24). However, the ALJ's opinion, the Commissioner's brief, and the notice Plaintiff received regarding his hearing indicate an application filing date of May 20, 2010. (D.E. No. 15, Defendant's Brief Pursuant to Local Civil Rule No. 9.1 ("Def.'s Br.") at 1; Tr. at 10, 64). Regardless, this discrepancy has no substantive bearing on the case.

The Court is "bound by the ALJ's findings of fact if they are supported by substantial evidence," but "exercise[s] plenary review of all legal issues." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This limitation on the Court's discretion applies "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### B.     Five-Step Process

An individual is "disabled" and therefore eligible for SSI "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The aggregate impairment must be severe to the point that the individual cannot "engage in any . . . kind of substantial gainful work which exists in the national economy . . . [i.e.] work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* § 1382c(a)(3)(B).

To determine whether an individual has a disability for the purposes of SSI benefits, the Commissioner uses a sequential, five-step analysis. 20 C.F.R. § 416.920(a)(4). First, a claimant must not have engaged in substantial gainful activity since the alleged disability onset date. *Id*. § 416.920(a)(4)(i), (b). "Substantial gainful activity is work activity that involves doing significant physical or mental activities" that are "usually done for pay or profit, whether or not a profit is realized." *Id.* § 416.972(a)-(b). Second, a claimant must have a medically determinable impairment, or combination of impairments, severe enough to limit the claimant's ability to

3

perform basic work activities for a continuous period of at least twelve months. *Id.* § 416.920(a)(4)(ii), (c); *id.* § 416.909. Third, the impairment(s) must meet or equal a listing in Appendix 1 of 20 C.F.R. Part 404, Subpart P. *Id.* § 416.920(a)(4)(iii), (d). An impairment or combination of impairments "is medically equivalent to a listed impairment . . . if it is at least equal in severity and duration to the criteria of any listed impairment." *Id.* § 416.926(a). If a claimant meets his or her burden during the first three steps, the claimant is deemed disabled and the Commissioner's review stops. *Id.* § 416.920(a)(4).

However, if a claimant meets his or her burden on the first two steps, but fails on the third, the analysis proceeds to the fourth step and the Commissioner evaluates the claimant's residual functional capacity ("RFC"). *Id.* § 416.920(a)(4)(iv), (e). RFC is "the most [the claimant] can still do despite [his or her] limitations," including non-severe limitations. *Id.* § 416.945(a)(1)-(2). At step four, a claimant must demonstrate that he or she cannot perform "past relevant work" in light of his or her RFC. *Id.* § 416.920(a)(4)(iv), (f). "Past relevant work" is defined as work the claimant has "done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 416.960(b)(1). If the claimant is deemed incapable of performing his or her past relevant work, the analysis proceeds to the fifth and final step. In order to be deemed disabled at step five, the claimant must be unable to adjust to other work in light of his or her RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v), (g). Before denying a claim at the fifth step, the Commissioner must provide evidence that such other work "exists in significant numbers in the national economy that [the claimant] can do." *Id.* § 416.960(c)(2).

The claimant bears the burden of proof for the first four steps of the analysis. *Poulous v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007). The burden shifts to the Commissioner for

the fifth step. *Id.*; *see also Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (noting that "the burden of production shifts to the Commissioner" at the fifth step) (internal quotation marks omitted)).

## III.  The ALJ's Decision

The ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (Tr. at 18). At step one, the ALJ relied on Plaintiff's testimony and an Adult Disability Report in finding that Plaintiff had not engaged in substantial gainful activity since filing his application on May 20, 2010. (Tr. at 12). At step two, the ALJ found that Plaintiff had several impairments that, taken individually or collectively, had been severe for a continuous period exceeding twelve months. (*Id.*). Specifically, the ALJ found that Plaintiff suffered from the following severe impairments: herniated disc, lumbar spine; asthma; anxiety disorder; and depressive disorder. (*Id.*). At step three, the ALJ determined that Plaintiff's physical and mental impairments neither met nor were medically equivalent to any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 12-13). In making this determination, the ALJ considered the §§ 1.00 (musculoskeletal system) and 12.00 (mental disorders) listings. (*Id.*).

At step four, the ALJ assessed Plaintiff's RFC and found that he was able to perform simple, repetitive, sedentary work[2] despite his physical, mental, and environmental limitations. (Tr. at 14). The ALJ further found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning

---

[2] 20 C.F.R. § 416.967(a) defines sedentary work as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

the intensity, persistence and limiting effects of these symptoms are not credible to the extent he alleges he cannot work." (Tr. at 15).

With respect to Plaintiff's physical impairments, the ALJ considered Plaintiff's medical records and found that, although Plaintiff suffers from some physical limitations, he has "no completely debilitating physical conditions[,] . . . radicular symptoms, or deficits of strength, sensation or reflex." (*Id.*). The ALJ acknowledged that a consultative examiner found "some loss of motion in the cervical spine and tenderness and marked spasms in the lumbar spine," but noted that "the state agency medical experts concluded that [Plaintiff] retained the residual functional capacity for light work." (*Id.* (citing Tr. at 401-09)). The ALJ further observed that "every physical examination chronicles [Plaintiff] to have a normal gait and station, without the need of any assistive device." (*Id.*). The ALJ ultimately concluded that, while Plaintiff may experience occasional lower back discomfort, the back pain was not "preclusive of all work activity." (*Id.*).

Importantly, the ALJ gave "great weight" to the state agency's physical RFC assessments, which documented Plaintiff's exertional, postural, manipulative, visual, communicative, and environmental limitations. (Tr. at 16 (citing Tr. at 410-15, 443)). A physical RFC assessment from September 2010 indicates that Plaintiff's exertional capacity was limited to occasionally lifting and carrying twenty pounds; frequently lifting and carrying ten pounds; standing and walking for four hours in an eight-hour workday; and sitting for six hours in an eight-hour workday. (Tr. at 410-15). Additionally, this physical RFC assessment indicates that Plaintiff experienced only slight postural limitations; no manipulative, visual, or communicative limitations; and only slight environmental limitations. (Tr. at 411-13). Nonetheless, the ALJ found that Plaintiff's physical RFC was "slightly more limited than that assessed by the State agency." (Tr. at 16).

6

The ALJ also evaluated Plaintiff's mental impairments and noted that Plaintiff did not see a therapist until December 2011, well after his May 2010 application filing date and his alleged disability onset date of February 2010. (Tr. at 15). The ALJ reviewed Plaintiff's mental health records and found that his anxiety and insomnia improved with treatment and that his depression did "not result in a complete disability." (Tr. at 15-16). Moreover, the ALJ noted that every mental status examination within the record found that Plaintiff "was alert and fully oriented, making and maintaining good eye contact." (Tr. at 16). The ALJ also stressed that there was "no definitive documentation of suicidal ideation, hallucinations, delusions or paranoid thinking, difficulty concentrating or thinking, psychomotor retardation or agitation, decreased energy or anhedonia." (*Id.*). Additionally, the ALJ found that Plaintiff could "understand, remember and carry out instructions, interact appropriately with co-workers and supervisors, and deal with stresses in a normal work setting." (*Id.*). The ALJ found that these abilities met the "basic mental demands of competitive, remunerative unskilled work." (*Id.* (citing SSR 85-15, 1985 WL 56857 (Jan. 1, 1985))).

In evaluating Plaintiff's mental impairments, the ALJ accorded "great weight" to the state agency mental assessments, which indicated that Plaintiff's mental RFC was in the "narrow light" range. (*Id.*). The ALJ explained that several state agency experts reviewed the evidence and reached the same conclusions, that these assessments were consistent with the objective findings of the consultative examiner, and that the assessments of Plaintiff's treating physicians did not contradict these assessments. (Tr. at 16-17).

As to Plaintiff's credibility, the ALJ determined that "his allegations of complete disability are generally not credible." (Tr. at 17). Noting that Plaintiff had "a very poor, sporadic work history" and had "engaged in zero substantially gainful activity during the 7 years prior to the

7

alleged onset date," the ALJ inferred that Plaintiff was not working for reasons unrelated to his medical problems.  (*Id.* (citing Tr. at 100-01)).  Furthermore, the ALJ questioned the intensity of his symptoms, pointing out that he had not been taking strong narcotic pain medication and primarily visited the doctor's office for medication refills and checkups, rather than for examination and treatment.  (*Id.*).  The ALJ also observed that Plaintiff was capable of socializing and living independently and found that his "activities of daily living further show that he is not incapacitated."  (*Id.* (citing Tr. 128-38)).

Ultimately, the ALJ concluded that Plaintiff's combined physical and mental impairments were not so severe as to prevent him from performing "many basic activities associated with work."  (Tr. at 16).  The ALJ determined that Plaintiff retained the limited RFC necessary "to perform the exertional demands of a range of sedentary work."  (*Id.*).  Still, the ALJ found that Plaintiff could not perform his "past relevant work" because his past work as a driver "was semi-skilled and involved more than simple and repetitive tasks," which Plaintiff was unable to do because of his limited RFC.  (Tr. at 17 (citing 20 C.F.R. § 416.965)).

Consequently, the ALJ proceeded to the fifth and final step.  Having concluded that Plaintiff was capable of sedentary work, the ALJ turned to the Medical-Vocational Guidelines ("Grids") found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to ascertain whether Plaintiff was capable of performing work that exists in significant numbers in the national economy, considering his RFC, age, education, and work experience.  (Tr. at 17-18 (citing 20 C.F.R. 416.969(a)).  Specifically, the ALJ relied on Rule 201.19 in the Grids in assessing whether Plaintiff was disabled.  (Tr. at 18).  Per Rule 201.19, if a claimant is restricted to sedentary work, a finding of

not disabled is directed for claimants aged forty-five to forty-nine years old[3] with limited education and whose past work experience required nontransferable skills or semi-skills. 20 C.F.R. § Pt. 404, Subpt. P, App. 2. The ALJ expressly relied on SSR 83-14 and SSR 96-9p in finding that Plaintiff's non-exertional limitations had "little or no effect on the occupational base of unskilled sedentary work."[4] (Tr. at 18; *see* SSR 83-14, 1983 WL 31254 (Jan. 1, 1983); SSR 96-9p, 1996 WL 374186 (July 2, 1996)). Thus, the ALJ found that Plaintiff was not disabled because he was "only occasionally limited" and jobs "exist[ed] in significant numbers in the national economy that [he] could perform." (Tr. at 17-18).

**IV.    Analysis**

Plaintiff raises four issues on appeal: (1) the ALJ mischaracterized the evidence and failed to evaluate the severity of all of his alleged impairments; (2) the ALJ improperly evaluated his symptoms, resulting in an erroneous RFC finding; (3) the ALJ impermissibly relied on Social Security Rulings to assess whether his non-exertional impairments significantly eroded his occupational base without consulting a vocational expert or providing him with advance notice; and (4) the ALJ did not abide by Social Security Ruling 96-7p[5] in assessing his credibility. (Pl.'s Br. at 1).

---

[3] Although Plaintiff was forty-four-years-old when he applied for SSI, the ALJ permissibly declined to "apply the age categories mechanically in [this] borderline situation." *See* 20 C.F.R. § 416.963(b). Pursuant to the regulations, an ALJ will treat claimants in such situations as belonging to the older category when doing so enhances the likelihood of a disability finding. *Id.*

[4] "The term 'occupational base' means the approximate number of occupations that an individual has the RFC to perform considering all exertional and nonexertional limitations and restrictions." SSR 96-9p.

[5] In the "Table of Contents" and "Statement of Issues" sections of his brief, Plaintiff indicates that his credibility argument is based on SSR 96-9p. (Pl.'s Br. at ii, 1). However, in the argument section, he discusses SSR 96-7p. (*Id.* at 36). Because SSR 96-9p does not even use the word "credibility," the Court considers this reference a typo and evaluates Plaintiff's argument based on SSR 96-7p.

9

**1. The ALJ's Step-Two Analysis**

Plaintiff argues that the ALJ mischaracterized the record and that the "ALJ decision contains conclusory statements about the medical evidence that contradict the actual medical evidence of record." (*Id.* at 25). Specifically, Plaintiff contends that the ALJ impermissibly disregarded evidence of his hallucinations, concentration problems, impaired memory, "borderline to low average level of intelligence," antalgic gait, pain on ambulation, and limited range of hip and shoulder motion. (*Id.* at 25-27). Plaintiff argues that the ALJ's mischaracterizations of the record resulted in a flawed step-two analysis and thus a "decision not supported by substantial evidence."[6] (*Id.* at 25; *see also* Pl.'s Reply Br. at 5).

However, as the Commissioner correctly points out, any error the ALJ may have committed at step two is harmless because the ALJ found in Plaintiff's favor at step two. (Def.'s Br. at 8). If an ALJ favors an SSI claimant at step two, "even if he . . . erroneously concluded that some of [the claimant's] other impairments were non-severe, any error [is] harmless." *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007). Indeed, "where the Commissioner finds that the claimant suffers from even one severe impairment, any failure . . . to identify other conditions as being severe does not compromise the integrity of the analysis." *Ross v. Astrue*, No. 08-5282, 2010 WL 777398, at *5 (D.N.J. Mar. 8, 2010) (citing *Salles*, 229 F. App'x at 145 n.2; *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 261 n.2 (3d Cir. 2006)). Thus, if an ALJ commits an error at step two but nonetheless finds in the claimant's favor at this step, the error is harmless "because, when an ALJ makes an RFC determination, he must consider the combined effect of all the

---

[6] Plaintiff's moving brief does not specify at which step in the analysis the ALJ's alleged mischaracterizations occurred. (*See* Pl.'s Br. at 25-34). However, Plaintiff clarifies in his reply brief that his objections to the ALJ's characterization of the record pertain to step two, at which the ALJ determined that Plaintiff had several impairments that, taken singly or together, were severe for a continuous period exceeding twelve months. (D.E. No. 16, Plaintiff's Reply Brief ("Pl.'s Reply Br.") at 5-9; Tr. at 12).

[claimant's] impairments, whether those impairments are severe or not-severe." *Williams v. Comm'r of Soc. Sec.*, No. 12-5637, 2013 WL 4500335, at *17 (D.N.J. Aug. 21, 2013) (citing 20 C.F.R. § 404.1523).

Plaintiff argues that the Third Circuit's holding in *Salles* is "limited to specific circumstances where the claimant's alleged impairment is generalized and not supported by evidence." (Pl.'s Reply Br. at 8). Furthermore, Plaintiff attempts to distinguish the instant case from *Salles*, arguing that "there was no medical evidence before the ALJ that [the claimant in *Salles*] had been diagnosed and treated for [the alleged] condition." (*Id.*). Plaintiff thus contends that the harmless-error rule articulated in *Salles* does not apply here because the impairments at issue in this case "were diagnosed and treated" and therefore not lacking in evidentiary support. (*Id.* at 9).

However, Plaintiff fails to cite any legal authority to support his contention that the harmless-error rule set forth in *Salles* is strictly limited to cases with "specific circumstances where the claimant's alleged impairment is generalized." (*See id.* at 8). Even more fatally, Plaintiff's contention is logically untenable because restricting the availability of the harmless-error rule to cases where the alleged impairment is "not supported by evidence" would effectively eviscerate the rule — after all, an ALJ commits no error by deeming an impairment "not supported by evidence" to be non-severe. Finally, "diagnoses alone are insufficient to establish" that an impairment is severe at step two. *Salles*, 229 Fed. App'x at 145. Nothing in the *Salles* decision indicates that the harmless-error rule is narrowly confined to the ALJ's step-two assessments of undiagnosed impairments.

The Court concludes that, even if the ALJ erred at step two in finding that Plaintiff's other asserted impairments were non-severe, such error was harmless.

### 2. The ALJ's RFC Assessment

Plaintiff next argues that the ALJ "failed to properly evaluate all of [his] symptoms as required by 20 C.F.R. § 416.929," thus "resulting in a residual functional capacity determination that did not reflect all of Plaintiff's limitations." (Pl.'s Br. at 29). In evaluating a claimant's symptoms for RFC purposes, the ALJ must "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). However, a claimant's statements about his or her

> pain or other symptoms will not alone establish that [the claimant is] disabled; there must be medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant] is disabled. In evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the ALJ must] consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings and statements about how [the claimant's] symptoms affect [him or her].

*Id.*; *see also* SSR 96-4p, 1996 WL 374187 (July 2, 1996). The ALJ stated in his decision, and Plaintiff agrees, that the RFC determination entails a two-step process wherein the ALJ must (1) consider "whether there is an underlying medically determinable physical or mental impairment[]" and if so (2) "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (Tr. at 14; Pl.'s Br. at 30).

Here, the ALJ expressly found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not

12

credible to the extent he alleges he cannot work." (Tr. at 15). In other words, the ALJ found for Plaintiff at step one, but against him at step two of the RFC determination.

Plaintiff argues that he was "diagnosed with an impulse control disorder in addition to his depression and anxiety diagnoses" and that the ALJ "failed to properly consider the impulse control disorder as severe." (Pl.'s Br. at 30 (citing Tr. at 605-06, 608)). The Commissioner concedes that some of Plaintiff's medical records "reflect a diagnosis of impulse control disorder," but asserts that those same records "consistently noted 'intact' impulse control." (Def.'s Br. at 7 (citing Tr. at 605-06, 608)). Moreover, the Commissioner points out that "Plaintiff alleges only that the condition would cause 'difficulty getting along with co-workers and perhaps even the public.'" (Def.'s Br. at 8 (quoting Pl.'s Br. at 30-31)). In ascertaining Plaintiff's RFC, the ALJ considered Plaintiff's ability to interact with others and expressly accorded great weight to the state agency's mental assessments. (Tr. at 16). These mental assessments indicated that Plaintiff could "socially interact adequately" and that his ability to interact appropriately with the public and get along with co-workers was "not significantly limited." (Tr. at 350, 353, 462).

Next, Plaintiff argues that the ALJ failed to consider his radicular symptoms in the course of his RFC analysis. (Pl.'s Br. at 31-33). Plaintiff cites to medical records indicating a September 2010 diagnosis of "bilateral lumbosacral radiculopathy" as evidence of his condition. (*Id.* at 31-32 (citing Tr. at 402)). Yet the ALJ expressly acknowledged that these records "noted some loss of motion in the cervical spine and tenderness and marked spasms in the lumbar spine." (Tr. at 15 (citing Tr. at 401-06)). The ALJ simply accorded greater weight to the findings of the state agency medical experts, which concluded that Plaintiff "retained the residual functional capacity for light work." (Tr. at 15 (citing Tr. at 407-09)). Notably, the ALJ deemed Plaintiff's herniated lumbar disc to be a "severe impairment" and recognized that Plaintiff experienced lower back pain. (Tr.

at 12, 15). Consequently, as the Commissioner argues, any treatment records documenting Plaintiff's stiffness or pain are consistent with the ALJ's decision. (Def.'s Br. at 9). The Court agrees with the Commissioner that a diagnosis of radiculopathy would "not suggest any greater limitation of function" than the ALJ's findings of herniation and back pain. (*See id.*).

Finally, Plaintiff contends that the ALJ failed to consider the medical evidence indicating a diagnosis of insomnia. (Pl.'s Br. at 33-34). Plaintiff acknowledges that the ALJ expressly considered his insomnia by "noting that in February of 2012 he reported that he was sleeping better and less depressed." (*Id.* at 34 (citing Tr. at 16)). However, he argues that the ALJ only relied "on one progress note following an increase in [Plaintiff's] Trazadone dosage." (*Id.* (citing Tr. at 608)). Furthermore, he points out that a later progress note indicates that Plaintiff continued experiencing difficulty sleeping despite the increased Trazadone dosage. (*Id.* (citing Tr. at 606)). The Commissioner responds by emphasizing that the ALJ expressly noted Plaintiff's sleeping problem. (Def.'s Br. at 7 (citing Tr. at 14)). Upon review of the record and the ALJ's decision, the Court concludes that the ALJ adequately considered the persistence and intensity of Plaintiff's insomnia in evaluating Plaintiff's RFC.

In sum, the Court concludes that the ALJ properly evaluated Plaintiff's RFC and that the RFC determination was supported by substantial evidence.

### 3. The ALJ's Step-Five Analysis

Plaintiff argues that the ALJ's step-five analysis failed to comply with the following rule established in *Sykes v. Apfel*: "[T]he Commissioner cannot determine that a claimant's nonexertional impairments do not significantly erode his occupational base under the medical-vocational guidelines without either taking additional vocational evidence establishing as much or providing notice to the claimant of his intention to take official notice of this fact." (Pl.'s Br. at

18 (quoting *Sykes*, 228 F.3d 259, 261 (3d Cir. 2000))).  Plaintiff complains that, contrary to the rule set forth in *Sykes*, the ALJ found that his non-exertional impairments did not significantly erode his occupational base without consulting a vocational expert or providing advance notice. (*Id.* at 19).

Plaintiff concedes that the *Sykes* rule "does not apply to claims where the [Commissioner] relies on an SSR that includes a statement explaining how the particular nonexertional limitation(s) under consideration in the claim affects the occupational base." (*Id.* at 20-21).  Indeed, at step five "the Commissioner can satisfy its burden of proof regarding availability of jobs in the national economy via rulemaking rather than requiring actual evidence on a case-by-case basis." *Allen v. Barnhart*, 417 F.3d 396, 402-03 (3d Cir. 2005).  Yet Plaintiff contends that the Third Circuit's decision in *Allen* bars ALJs from relying on SSRs "in a summary fashion," and he characterizes the ALJ's reliance on SSRs at step five as fatally summary.  (Pl.'s Br. at 21-22).  Specifically, Plaintiff argues that if the Commissioner "'wishes to rely on an SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base.'" (*Id.* at 21 (quoting *Allen*, 417 F.3d at 407)).  In other words, there must be a "'fit' between the facts of a given case and the way in which an SSR dictates that an individual's non-exertional limitations impact upon her occupational base." *Guerrero v. Comm'r of Soc. Sec.*, 249 F. App'x 289, 293 (3d Cir. 2007) (citing *Allen*, 417 F.3d at 406).

Contrary to Plaintiff's contention, the ALJ permissibly relied on SSRs in lieu of consulting a vocational expert.  "In *Allen* . . . the ALJ's conclusion was not supported by substantial evidence because '[the Court was] at a loss to find within the Ruling itself the conclusion the ALJ seems to find regarding the occupational base.'" *Breslin v. Comm'r of Soc. Sec.*, 509 F. App'x 149, 154-55

15

(3d Cir. 2013) (quoting *Allen*, 417 F.3d at 405). Unlike in *Allen*, the ALJ's reliance on SSRs 83-14 and 96-9p was proper here because these Rulings expressly provide that the sedentary occupational base is not eroded by the type of non-exertional, mental, and environmental impairments suffered by Plaintiff.[7] *See Breslin*, 509 F. App'x at 155 (affirming an ALJ's reliance on a Ruling because it directly applied to the claimant's non-exertional impairments). Notably, the ALJ's reliance on SSR 96-9p finds support in cases involving similar facts. *See Raymond v. Comm'r of Soc. Sec.*, No. 12-05660, 2014 WL 1783098, at *4 (D.N.J. May 5, 2014) (upholding the decision of an ALJ who expressly relied on SSRs 83-14 and 96-9p in lieu of a vocational expert or administrative notice); *Granados v. Comm'r of Soc. Sec.*, No. 13-781, 2014 WL 60054, at *12-13 (D.N.J. Jan. 7, 2014) (same, involving reliance on SSRs 85-15 and 96-9p).

Furthermore, remand is not required due to the ALJ's failure to provide advance notice. "[W]hen the ALJ has not provided such advance notice, '[it is] only appropriate to give close scrutiny to the ALJ's reliance on a Ruling.'" *Breslin*, 509 F. App'x at 155 (quoting *Allen*, 417 F.3d at 408); *see also Rzonca v. Colvin*, No. 14-00003, 2015 WL 71154, at *7 (D.N.J. Jan. 6, 2015) (holding that "while the ALJ should provide notice of his intention to rely upon an SSR as evidence of an undiminished occupational base, the failure to do so means the court should apply close scrutiny to the ALJ's reliance on an SSR"). Since SSRs 83-14 and 96-9p apply directly to Plaintiff's non-exertional impairment, the ALJ's determination survives close scrutiny. *See Breslin*, 509 F. App'x at 155 (declining to remand for lack of notice because "the Rulings the ALJ relied upon here applied directly to [the claimant's] non-exertional impairments" and thus "the ALJ's reliance on them passes [close] scrutiny").

---

[7] Plaintiff contends that the ALJ impermissibly relied "on SSR 85-15 in a summary fashion." (Pl.'s Br. at 21). To the contrary, at step five, the ALJ expressly indicated that he found Plaintiff to be "'not disabled' . . . within accordance of SSR's 83-14 and 96-9p." (Tr. at 18). Thus, the Court addresses whether the ALJ's reliance on SSRs 83-14 and 96-9p was permissible.

### 4. The ALJ's Credibility Determination

Plaintiff asserts that the ALJ erred in determining that Plaintiff lacked credibility. (Pl.'s Br. at 34-37). First, he argues that the ALJ was factually incorrect in stating that he "engaged in zero substantial gainful activity during the 7 years prior to the alleged onset date" of May 2010. (*Id.* at 35 (citing Tr. at 17)). Plaintiff contends that the ALJ impermissibly used this inaccuracy as a basis for attacking his credibility. (Pl.'s Br. at 35). Second, Plaintiff argues that the ALJ ran afoul of SSR 96-7p by referencing the fact that Plaintiff does not take narcotic painkillers in his credibility determination. (*Id.* at 36).

Plaintiff's first argument highlights an inconsistency in the record. Plaintiff cites an earnings report indicating that he earned $22,097 in 2008. (Pl.'s Br. at 35 (citing Tr. 102)). This report directly contradicts the ALJ's finding that Plaintiff "engaged in zero substantial gainful activity during the 7 years prior to the alleged onset date." (Tr. at 17). However, an alternative earnings report indicates that Plaintiff had zero earnings from 2005 to 2011, corroborating the ALJ's finding. (Tr. at 98).

Plaintiff's first argument has merit, as "ALJs have a duty to develop a full and fair record in social security cases." *See Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). Here, the ALJ did not even acknowledge the discrepancy in the earnings reports, let alone explain why he credited one report over the other. However, the fact that the ALJ failed to properly develop the record with respect to this discrepancy does not warrant overturning the ALJ's credibility determination because the ALJ also relied on other grounds to impeach Plaintiff's credibility. *See Conklin v. Comm'r of Soc. Sec.*, No. 09-1450, 2010 WL 2680278 at *6 (D.N.J. June 30, 2010) (overlooking the fact that an ALJ erred in citing an inaccurate earnings record because the ALJ also relied on other grounds to impeach the claimant's credibility).

As the Commissioner points out, the ALJ also impugned Plaintiff's credibility based on the fact that he initially stopped working because his employer "went out of business." (Def. Br. at 11; Tr. at 17). When a claimant discontinues work for reasons unrelated to his or her alleged disability, the ALJ is permitted to consider that fact in determining the extent to which a claimant's assertions are credible. *See Orriols v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 286 (3d Cir. 2006) (acknowledging, with approval, an ALJ's consideration of the reason an SSI claimant discontinued work in evaluating the claimant's credibility with respect to asserted symptoms). Here, it was permissible for the ALJ to question Plaintiff's credibility upon considering the reason Plaintiff initially stopped working.

With respect to his second argument, Plaintiff asserts that the ALJ contravened SSR 96-7p by using the fact that he did not take narcotic painkillers as a basis for attacking his credibility, without accounting for justifiable excuses, namely Plaintiff's poverty. (Pl.'s Br. at 36-37). In other words, Plaintiff argues that the ALJ improperly considered which medications he did not take in evaluating the extent to which his claims of pain, and therefore disability, were credible. Additionally, Plaintiff argues that, in assessing his credibility, the ALJ improperly considered the fact that many of his doctor's visits were merely for checkups or prescriptions refills. (*Id.*). Plaintiff contends that the ALJ thus violated SSR 96-7p, which provides that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain . . . [his or her] failure to seek medical treatment." (*Id.* (citing SSR 96-7p)).

Yet the ALJ merely stated that Plaintiff's lack of a prescription for narcotic painkillers "*may tend to indicate* his physical pain is not overly debilitating." (Tr. at 17) (emphasis added).

18

Thus, the ALJ's decision did not place great weight upon the fact that Plaintiff is not taking narcotic painkillers. Moreover, with respect to the allegation that the ALJ impermissibly held Plaintiff's failure to obtain treatment against him, the Social Security Ruling that Plaintiff cites to support his position states that it is permissible for an ALJ to determine that a claimant's assertions are "less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR 96-7p. Here, the ALJ found exactly such an inconsistency.

Accordingly, the ALJ's impeachment of Plaintiff's credibility is not unsound, and the Court affirms the ALJ's determination.

## V. Conclusion

For the foregoing reasons, the Court AFFIRMS the Commissioner's decision and dismisses this case.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**